NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0052n.06
Filed: January 23, 2009

No. 07-2346

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| | ) | |
| JESSE LEE STARK, | ) | O P I N I O N |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: CLAY and GIBBONS, Circuit Judges, and STAMP, District Judge.*

FREDERICK P. STAMP, JR., Senior District Judge. Defendant-appellant Jesse Lee Stark

("Stark") pleaded guilty in the United States District Court for the Western District of Michigan to

being a convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Stark now

challenges his fifteen-year mandatory minimum sentence under the Armed Career Criminal Act, 18

U.S.C. § 924(e) ("ACCA"), and the application of its enhancement provisions.

I. BACKGROUND

Stark was indicted on February 7, 2007, with a single count of felon in possession of a

firearm in violation of 18 U.S.C. § 922(g)(1). He thereafter entered into a written plea agreement

in which he agreed to plead guilty to the charge. Specifically setting forth the possible penalties that

Stark could face by pleading guilty, the plea agreement stated that he would be subject to a statutory

_____

*The Honorable Frederick P. Stamp, Jr., Senior United States District Judge for the Northern
District of West Virginia sitting by designation.

maximum sentence of ten years. If, however, the district court found that Stark had three previous convictions by any court referred to in 18 U.S.C. § 922(g)(1)[1] for either a violent felony, a serious drug offense, or both, that were committed on different occasions from one another, then the district court could impose the enhanced statutory minimum and maximum sentence of at least fifteen years and up to life in prison under 18 U.S.C. § 924(e). Moreover, the plea agreement contained a waiver of appeal and collateral attack, acknowledging that

> the Defendant knowingly waives the right to appeal any sentence within or below the range determined by the Court and the manner in which the sentence was determined on the grounds set forth in 18 U.S.C. § 3742 or any ground whatever, in exchange for the concessions made by the United States' Attorney's Office in this plea agreement.

Stark entered his guilty plea pursuant to the plea agreement on July 2, 2007, at which time the Assistant United States Attorney read for the record Stark's appellate waiver, and the district court confirmed Stark's understanding of such waiver through the following series of questions and answers:

> THE COURT: Then lastly, Paragraph 11, which is on page 9. In that paragraph, you're waiving certain rights you have to appeal or file what's known as a collateral attack. You've read and reviewed that and talked to your attorney about it?
>
> DEFENDANT: Yes, sir.
>
> THE COURT: And that's your decision?
>
> DEFENDANT: Yes, sir.
>
> THE COURT: Now you've read and reviewed this entire agreement, correct?
>
> DEFENDANT: Yes, sir.

---

[1]Title 18, United States Code, Section 922(g)(1) refers to "any person. . .who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year."

THE COURT: And you indicated it's correct, it's accurate?

DEFENDANT: Yes, sir.

THE COURT: And you agree to everything that's in there?

DEFENDANT: Yes, sir.

Also at the plea hearing, the district court discussed the possibility of Stark's being characterized as an armed career criminal, stating, "Now I haven't actually read the statutes from those other states so there's always the possibility of some wiggle room in it. But I think it's probably pretty safe to say that he's probably going to be an armed career criminal at this point."

Prior to his sentencing hearing, Stark objected to the presentence investigation report prepared by the United States Probation Officer, which indicated that Stark had four previous convictions considered as violent felonies under the ACCA and its accompanying enhancement provision. Particularly, Stark's Objection No. 1 to the presentence investigation report stated, in pertinent part, that he

> objects to the North Carolina, Breaking, Entering and Larceny offenses being considered violent felonies. Therefore, [his counsel] objects to Mr. Stark being considered an armed career criminal. If the offenses were not considered violent felonies, then Mr. Stark is not subject to an enhanced sentence under 18 U.S.C. § 924(e)(1), because he will not have the three required felony convictions.

The convictions that Stark contests consist of three separate North Carolina felonies to which Stark pleaded guilty on June 1, 1998, including breaking or entering and larceny, each classified as a Class H felony, and all punishable by a maximum penalty of twenty-five months imprisonment.[2]

---

[2]The presentence investigation report also lists a conviction for second-degree home invasion, which is also considered to be a crime of violence under the armed career criminal guideline and the enhanced sentence provisions of 18 U.S.C. § 924(e)(1). Stark, however, does not contest the applicability of the ACCA enhancement provisions to this conviction.

3

Stark appeared before the United States District Court for the Western District of Michigan on October 19, 2007, for sentencing, at which the district court found that Stark was an armed career criminal under the ACCA because each of his three convictions for breaking or entering were tantamount to burglary or consisted of offenses that presented a potential risk of a physical injury to another. Accordingly, because of Stark's career criminal status, the district court sentenced Stark to a mandatory minimum fifteen-year sentence rather than the 168 to 210 months that Stark would have received if not for the applicability of the ACCA enhancement provisions.

Stark now appeals his conviction, arguing that his three felony convictions for breaking or entering buildings under North Carolina laws should be considered non-violent felonies. Stark, therefore, argues that the district court erred in finding that his three prior North Carolina convictions constituted either "generic burglary," or presented a potential risk of a physical injury to another as defined by 18 U.S.C. § 924(e)(2)(B)(ii), and he should not have received a fifteen-year mandatory minimum sentence as an armed career criminal under 18 U.S.C. § 924(e).

## II. ANALYSIS

A.    <u>Waiver</u>

The government objected to this appeal based upon a waiver of appellate rights concerning the issue currently before this Court. Specifically, the government contends that Stark agreed to a valid appellate waiver when he entered into the plea agreement that states, in pertinent part, that "[d]efendant knowingly waives the right to appeal any sentence within or below the range determined by the Court and the manner in which the sentence was determined on the grounds set forth in 18 U.S.C. § 3742 or any ground whatever...." Asserting that a thorough review of the plea

4

hearing transcript demonstrates that Stark entered into the appellate waiver knowingly and voluntarily, the government argues that this Court should enforce the appellate waiver.

In response, Stark contends that he is not appealing whether his sentence was within or below the guidelines range, or the manner in which the sentence was determined. Rather, Stark asserts that he is appealing his sentence because the district court erroneously applied both the law and the definition of "violent crime" when determining whether Stark's North Carolina convictions were crimes of violence. Thus, Stark claims that because he did not waive his right to appeal an unreasonable sentence, a sentence imposed in violation of law, or whether his prior convictions met the criteria for the ACCA sentence enhancement, this Court has jurisdiction over this case.

It is well-established law that "a defendant in a criminal case may waive 'any right, even a constitutional right,' by means of a plea agreement." *United States v. Fleming*, 239 F.3d 761, 764 (6th Cir. 2001) (citing *United States v. Ashe*, 47 F.3d 770, 775-76 (6th Cir. 1995)). A court will enforce an appellate waiver as long as the defendant entered into the waiver both knowingly and voluntarily. *Fleming*, 239 F.3d at 764.

What does remain unclear in today's jurisprudence, however, is whether a defendant waives his right to appeal a district court's application of the ACCA by entering into a waiver of appellate rights. Courts have offered contrasting opinions on the issue. *Compare United States v. Haskins*, 198 F. App'x 280, 281 (4th Cir. 2006) (unpublished) ("Additionally, [the defendant] concedes he was informed of the penalties that could be imposed as a result of his guilty plea, including the effect of an enhancement under the ACCA. We conclude the appeal waiver is valid and enforceable and that [the defendant's] challenge to the district court's enhancement under the ACCA clearly falls within the scope of the waiver."), *with DeRoo v. United States*, 223 F.3d 919, 926 (8th Cir. 2000)

5

(noting that "defendants cannot waive their right to appeal an illegal sentence or a sentence imposed in violation of the terms of an agreement").

This Court has not issued an opinion on whether a valid waiver of appellate rights precludes a defendant from appealing an enhanced sentence pursuant to the ACCA. Nevertheless, this Court has at least addressed, if not decided, an issue identical to the one currently before this Court in *United States v. Caruthers*, 458 F.3d 459 (6th Cir. 2006), an opinion that can offer guidance to the Court in this case. In *Caruthers*, the defendant's plea agreement stated that "[t]he defendant knowingly waives the right to appeal any sentence within the maximum provided in the offense level as determined by the Court or the manner in which that sentence was determined on the grounds set forth in 18 U.S.C. § 3742 or on any ground whatever." 458 F.3d at 470. This Court first held that because applying the mandatory minimum of the ACCA is "literally" an aspect of "the manner in which that sentence was determined" the waiver applied to the defendant's sentence. *Id.* at 471.

The defendant argued that even if the appellate waiver encompassed his appeal, the waiver, nevertheless, could not as a matter of law preclude attacking a sentence on the grounds that it exceeded the statutory maximum. *Id.* This Court noted that "it is well settled in the federal courts that a defendant who waives his right to appeal does not subject himself to being sentenced entirely at the whim of the district court," and that "an appellate waiver may not bar an appeal asserting that the sentence exceeds the statutory maximum." *Id.* (internal citations omitted). Thus, this Court defined the issue before it as whether the defendant can challenge an enhanced sentence under the ACCA on grounds that it exceeds the statutory maximum. *Id.* at 472. Because the defendant's challenge failed on the merits, however, this Court assumed, without deciding, that the defendant's appellate waiver was unenforceable. *Id.*

6

In this case, as we did in *Caruthers*, 458 F.3d at 459, we need not determine whether Stark's appeal challenges an enhanced sentence under the ACCA on the grounds that his sentence exceeds the statutory maximum, because, for the reasons discussed below, Stark's appeal fails on the merits. Thus, this Court, assumes, without deciding, that Stark's appellate waiver is inapplicable, and turns to the merits of Stark's sentence enhancement argument.

B.      ACCA Enhancement Provisions

Stark argues that the district court erred in ruling that his three previous convictions for breaking or entering under North Carolina law are "violent felonies" under 18 U.S.C. § 924(e)(2)(B)(ii), and sentencing Stark to a fifteen-year mandatory minimum sentence under the ACCA and its sentence enhancement provisions.

The ACCA provides the following:

In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a *violent felony* or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).

18 U.S.C. § 924(e)(1) (emphasis added).  In turn, the statute defines the term "violent felony" as follows:

(B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that --

(i) has an element the use, attempted use, or threatened use of physical force against the person of another; or

7

> (ii) is *burglary*, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B)(i)-(ii) (emphasis added). Because the statute does not define "burglary," and because state statutory definitions of the crime either vary or do not exist, the Supreme Court in *Taylor v. United States*, 495 U.S. 575, 590-91 (1990), held that the term "burglary" must have a uniform definition independent of the labels prescribed by state criminal codes. Accordingly, the *Taylor* court pronounced a generic definition of "burglary" as

> a person has been convicted of burglary for purposes of a § 924(e) enhancement if he is convicted of any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime.

*Taylor*, 495 U.S. at 599. Moreover, the *Taylor* court held that a prior conviction will constitute "burglary" under the § 924 enhancement provision if "either (1) its statutory definition substantially corresponds to generic burglary, or (2) the charging paper and jury instructions actually required the jury to find all the elements of a generic burglary in order to convict the defendant." *Id.* at 602 (internal quotations omitted) (numbers added).

Stark pleaded guilty to three prior North Carolina felony convictions for breaking or entering and larceny, in violation of N.C.G.S. §§ 14-54(a), 14-72(b)(2), and 14-71.1. N.C.G.S. § 14-54 provides the following:

> §14-54 Breaking or entering buildings generally.
>
> (a) Any person who breaks or enters any building with intent to commit any felony or larceny therein shall be punished as a Class H felon.
>
> (b) Any person who wrongfully breaks or enters any building is guilty of a Class 1 misdemeanor.

(c) As used in this section, "building" shall be construed to include any dwelling, dwelling house, uninhabited house, building under construction, building within the curtilage of a dwelling house, and any other structure designed to house or secure within it any activity or property.

In each of Stark's three convictions, the arrest warrant and indictment stated that he broke into and entered a residence of another person. All three felonies were classified as Class H felonies, as mandated by the state statute.

In this appeal, Stark first contends that because his convictions for breaking or entering under N.C.G.S. § 14-54 are Class H felonies, and not considered "violent felonies" under North Carolina law,[3] these convictions are similarly incapable of "violent felony" status under the ACCA enhancement provision. This argument lacks merit.

In *United States v. Maness*, 23 F.3d 1006 (6th Cir. 1994), this Court already rejected Stark's argument that an offense under N.C.G.S. § 14-54 cannot be used to enhance his sentence because of its felony classification. In that case, the defendant argued that his prior burglary convictions under N.C.G.S. § 14-54 did not constitute violent crimes, and accordingly, they could not support his status as an armed career criminal. *Id.* at 1008. This Court ultimately held that "because Section 14-54, as defined by the North Carolina Supreme Court, requires both an unlawful or unprivileged entry and the intent to commit a crime within, we believe that Section 14-54 substantially corresponds to the generic definition of burglary." *Id.* at 1009. *See also United States v. Bowden*, 975 F.2d 1080, 1084-85 (4th Cir. 1992) ("We are thus of opinion that the two convictions under North Carolina law for breaking or entering under N.C.G.S. § 14-54 qualify as generic burglaries

---

[3]N.C.G.S. § 14-7.7(b)(1) defines a "violent felony," in pertinent part, as "[a]ll Class A through E felonies."

under the *Taylor* case and justify an enhancement of punishment under § 924(e)(2)(B)(ii).”); *United States v. Thompson*, 421 F.3d 278, 284 (4th Cir. 2005) (“Since *Bowden* disposes of [the defendant’s] challenge to the classification of a North Carolina burglary conviction as a ‘violent felony’ under § 924(e), we necessarily conclude that the statutory requirement of three prior convictions of violent felonies has been met.”).

Furthermore, this Court finds Stark’s second argument, that none of his convictions under N.C.G.S. § 14-54 can be considered a “burglary” under the ACCA enhancement provision because North Carolina has a separate statute entitled “First and Second Degree Burglary,” to also be unpersuasive. In formulating the generic definition of “burglary” in *Taylor v. United States*, 495 U.S. at 590-91, the Supreme Court specifically sought to eliminate clashing and inconsistent results based on how states termed an offense:

> It seems to us to be implausible that Congress intended the meaning of “burglary” for purposes of § 924(e) to depend on the definition adopted by the State of conviction. That would mean that a person convicted of unlawful possession of a firearm would, or would not, receive a sentence enhancement based on exactly the same conduct, depending on whether the State of his prior conviction happened to call that conduct “burglary.”

*Taylor*, 495 U.S. at 590-91. The name of the offense, therefore, remains irrelevant as long as general elements are satisfied, which this Court finds were so satisfied in this case. Accordingly, because Stark has been convicted of three separate offenses for breaking or entering under N.C.G.S. § 14-54, Stark’s fifteen-year mandatory minimum sentence as an armed career criminal under the ACCA was proper.

10

## III.  CONCLUSION

For the foregoing reasons, we AFFIRM the judgment and the sentence imposed by the district court.